IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DARNIVAL ROY CHANDLER, JR.  §
TDCJ No. 02182019,           §
                             §
        Petitioner,          §
                             §
V.                           §        No. 3:20-cv-86-K-BN
                             §
DIRECTOR, TDCJ-CID,          §
                             §
        Respondent.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Darnival Roy Chandler, Jr. ("Chandler"), a Texas prisoner serving forty years after being convicted of murder in Dallas County, has submitted a *pro se* writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. The Court has referred Chandler's habeas action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that Chandler's habeas petition should be denied.

**Applicable Background**

Through this habeas action, Chandler challenges his 2018 Dallas County conviction for murder with a deadly weapon, for which he received a 40-year sentence. *See State v. Chandler*, No. F-1575696-X (Crim. Dist. Ct. No. 6, Dallas Cnty., Tex. Feb. 1, 2018); Dkt. No. 18-1 at 16; Dkt. No. 3 at 2. The

1

Fifth Court of Appeals summarized the background facts of the case, in part, as follows:

> On May 29, 2015, Victor Cerda and Jonathan Castro were driving between two hotels – the Suburban Hotel/Orange Extended Stay (Suburban Hotel) and the Baymont Inn – to purchase and use drugs. Late in the evening, Cerda and Castro picked up a woman called Jamaica and took her to the Suburban Hotel. Jamaica came out of the Suburban Hotel with appellant and his one-year-old infant son. Cerda, Castro, Jamaica, appellant and the infant got into a car to drive back to the Baymont Inn. Upon their return to the Suburban Hotel, Cerda and Jamaica began to argue. Cerda testified at trial that appellant got upset and punched him. Cerda further testified Castro told appellant and Jamaica they were leaving and appellant began fighting with Castro. Appellant then ran into the Suburban Hotel where he was a registered guest and returned with a gun. Cerda testified appellant pointed his gun through the passenger side and fired one shot into Castro, killing him.

*Chandler v. State*, No. 05-18-00242-C, 2018 WL 6382120, at *1 (Tex. App. – Dallas, December 3, 2018).

This criminal judgment was affirmed on direct appeal later that year, but modified to reflect the jury's affirmative deadly weapon finding. *See Chandler*, 2018 WL 6382120 at *3; Dkt. 18-1 at 3-7. Chandler did not file a petition for discretionary review (PDR) in the Texas Court of Criminal Appeals (TCCA). Dkt. No. 3 at 3.

On or about April 15, 2019, Chandler filed an application for a state writ of habeas corpus challenging his conviction, which was denied without written reasons on November 13, 2019. *See Ex parte Chandler*, WR-90,538-01 (Tex. Crim. App. Nov. 13, 2019).

Chandler filed this federal petition for a writ of habeas corpus on January 14, 2020. *See* Dkt. No. 3. The State filed a court-ordered response to the federal habeas petition. *See* Dkt. No. 18. And Chandler replied. *See* Dkt. No. 25.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of

the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court

precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could

have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations

omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's

conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'"

(quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

### A.    Procedural Default

The State claims that Chandler's fourth ground for relief – an ineffective assistance of counsel ("IAC") claim stemming from the failure of his trial counsel to impeach a key eyewitness to the shooting, Victor Cerda, with inconsistent statements that Cerda initially gave to a detective – is unexhausted and, based on Texas's abuse-of-the-writ doctrine, could not be exhausted now, resulting in a procedural default. The undersigned agrees.

To properly satisfy the exhaustion requirement, the factual and legal bases for a claim must first be fairly presented to the highest state court for review. *Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The

exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A). That court in Texas is the TCCA.

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Failure to raise a claim in an initial state habeas corpus application may not be excused for cause unless the claim was not "reasonably available" at the time of the prior petition. *Fearance v. Scott*, 56 F.3d 633, 636 (5th Cir. 1995) (internal quotation marks and citation omitted). "To show cause, a petitioner must show that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). And to show prejudice, a petitioner must show that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted). "And a miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted." *Gonzalez*, 924 F.3d at 242 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992)).

Here, in his fourth IAC ground for relief, Chandler claims that his trial counsel was ineffective because he failed to impeach the key eyewitness, Cerda, with prior inconsistent statements. Specifically, Chandler alleges that Cerda testified at trial that he did not know Chandler's name or room number prior

to picking him up from the Suburban Hotel and that Jamaica was with him and victim when they arrived at the Suburban Hotel; however in a statement to police following the shooting, Cerda stated that he knew that "Meek" (Chandler's nickname) lived in room 229. Dkt. No. 19-11 at 10; *see also* Dkt. No. 3 at 7. Cerda further stated that he and the victim were not with Jamaica when they arrived to the Suburban Hotel, but that they picked her up along with Chandler. *See id.*; *see also* Dkt. No. 3 at 7.

But Chandler did not make these specific IAC allegations in his state habeas petition. He did claim that his trial counsel was ineffective for failing to impeach Cerda with prior inconsistent statements, but he alleged that his counsel should have pointed out different inconsistencies then those that he highlights here – namely, Cerda's statements as to why one "Joe" punched the victim, why Cerda drove to the "Suburban," and whether Jamaica could speak Spanish. *See* Dkt. No. 18-1 at 21-22, 24. Again, to properly exhaust a claim, the petitioner must first present both the factual and legal predicate of the claim to the state habeas court. *See Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). So here, even though Chandler did present to the state habeas court an IAC claim premised upon the failure to impeach Cerda using prior inconsistent statements, because the factual predicate of that claim differs from what Chandler seeks to assert here, the claim is unexhausted. *See Kurtz v. Davis*, CIVIL NO. SA-18-CA-00062-FB, 2018 WL 3193816, at *3 (W.D. Tex. June 27, 2018) ("In his state habeas action, Mr. Kurtz alleged the indictment

was void because it did not state the aggravated kidnapping occurred in Comal County; in his federal habeas action Mr. Kurtz argues the indictment was void because it was not timely. Because his federal habeas claim is not predicated on the same factual and legal basis as the claim raised in his state habeas action, the claim is not properly exhausted and is procedurally defaulted." citing *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2010)).

Because this ground for relief is unexhausted, and because the Texas abuse-of-the-writ doctrine would preclude Chandler from raising it for the first time in a subsequent habeas application before the TCCA, it is procedurally barred absent a showing of cause for the default and actual prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice.

Chandler fails to make that showing here. First, he fails to show cause for not asserting this specific ground for habeas relief to the TCCA. In his reply brief, Chandler focuses exclusively on the merits of the fourth IAC ground – which the Court construes liberally as a prejudice argument – referencing jurisprudence in which federal habeas courts found ineffective assistance of counsel based upon the failure to effectively cross-examine witnesses on crucial issues in the case. *See* Dkt. No. 25 at 7 (citing *Steinkuehler v. Meschner*, 176 F.3d 441, 445 (8th Cir. 1999) (finding counsel constitutionally defective where counsel "had in his hands material for a devastating cross-examination of [the witness] on critical issues in the case," as well as his credibility, but failed to do so); *Hadley v. Groose*, 97 F.3d 1131 (8th Cir. 1996) (finding counsel deficient

for multiple reasons, including failure to interview or call alibi witness and for failing to impeach officer with contents of another officer's report that undermined the testifying officer's credibility on a crucial issue in the case).

Unlike cases like *Steinkuehler* and *Hadley*, Chandler's trial counsel did thoroughly cross-examine Cerda. *See* Dkt. No. 19-14 at 112-146. While he might not have specifically tried to impeach Cerda with his prior inconsistent statements, Chandler fails to show how the inconsistencies of which he complains are especially damning to Cerda's credibility. The inconsistencies of which Chandler complains do not touch on the shooting itself and instead resemble the inconsistencies that the Fifth Circuit described as "inane" in the context of a *Strickland* analysis. *See Jones v. Cain*, 227 F.3d 228, 230-31 (5th Cir. 2000) (rejecting IAC claim predicated on the failure to impeach using prior inconsistent statements where the inconsistencies "approach[ed] inanity," such as whether $440 as opposed to $480 was taken in a robbery, whether potential witnesses were actually cousins as opposed to an uncle and nephew, and whether the perpetrators were 5'10" with scars and deformities).

And other evidence besides Cerda's eyewitness testimony implicated Chandler – namely, that bullets found in a safe in Chandler's hotel room matched the kind used to shoot the victim. Even assuming that Chandler's counsel was defective for failing to impeach Cerda with the inconsistent statements at issue, Chandler has not shown that this error "worked to his actual and substantial disadvantage, infecting his entire trial with error of

14

constitutional dimension," and excusing his procedural default. *Frady*, 465 U.S. at 170.

Chandler has not shown cause or prejudice for purposes of the procedural default analysis; nor does he show that a miscarriage of justice would result from this Court refusing to consider his fourth IAC ground for relief. Chandler has procedurally defaulted his fourth ground for relief, which should be denied.

## B.    Remaining IAC Claims

In his first, second, third, fifth, sixth, and seventh grounds for relief, Chandler claims that his trial counsel was ineffective. Dkt. No. 3 at 6-9, 2-5.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel"

15

guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of

the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting

*Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's

18

application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

In the first IAC ground, Chandler claims that his trial counsel was

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

ineffective for failing to investigate, generally, and for failing to seek any pre-trial discovery or file any pre-trial discovery motions. *See* Dkt. No. 3 at 6. Had he conducted such discovery, Chandler continues, his trial counsel would have discovered a safe that was found in his hotel room, which was later seized, illegally, and which contained bullets linking Chandler to the shooting. *See id.*

As for the general failure-to-investigate ground, Chandler fails to show that the TCCA unreasonably applied *Strickland* in rejecting it. First, the claim that his trial counsel failed to investigate, generally, is conclusory, and conclusory statements do not raise a constitutional issue in a habeas case. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Further, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir. 2016) (internal quotations omitted). Chandler fails to make that showing here, as he does not allege what a further, general investigation would have uncovered or how it would have altered the outcome of the trial.

As for the failure-to-seek-pre-trial-discovery claim, aside from the safe, Chandler does not state what specific discovery was missing and/or what pretrial motions should have been filed. The basis for Chandler's claim concerning the safe is unclear: as the State indicates, Chandler has not shown that his trial counsel was unaware of the State's intent to offer the metal safe and its contents as evidence. Chandler argues that a maid at the hotel

tampered with the safe "by removing [it] from room 229 and storing it in the room where she kept her cleaning cart." Dkt. No. 25 at 9. But Chandler's tampering allegation is conclusory, and his trial counsel did object to the safe on chain-of-custody grounds at trial – an objection that was overruled. It is unclear what pre-trial discovery on this issue would have unveiled that would have led to a different outcome. Chandler's "general speculations are insufficient." *Dean v. Davis*, No. 3:18-c-v2623-G-BN, 2019 WL 7882493, at *6 (N.D. Tex. Dec. 4, 2019), *rec. accepted* 2020 WL 619852 (N.D. Tex. Feb. 7, 2020) (citing *Trevino*, 829 F.3d at 338).

And, to the extent that Chandler's argument is that timely discovery regarding the safe would have allowed his trial counsel to file a motion to suppress the safe and its contents on Fourth Amendment grounds, as discussed below, such a motion would have been futile, and counsel is not required to file futile motions. *See Kock v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."; citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam)).

Even if Chandler could show that his trial counsel's failure to seek pre-trial discovery was somehow deficient, he would still need to show prejudice under *Strickland's* second prong. As the state appellate court concluded on direct review in assessing Chandler's claim that the safe was inappropriately authenticated under Texas law, "there was other evidence linking [Chandler]

21

to the crime including Cerda's eyewitness testimony." *Chandler*, 2018 WL 6382120, at *3.

Accordingly, the TCCA did not unreasonably apply *Strickland* in denying Chandler's first IAC ground for relief,

In his second IAC ground for relief, Chandler claims that his counsel was ineffective for failing to call Jamaica as a witness. Dkt. No. 3 at 6. Complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because assertions about what a witness would have stated are speculative. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on such a claim, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the proposed testimony of the witness, and show that the testimony would have been favorable to a particular defense. *See id.*

Chandler fails to meet that standard here. While he identifies the witness, he does not show that she would have been available to testify, what the content of the proposed testimony would have been, or that it would have been favorable to a particular defense. *See id.* At most, in his reply brief, Chandler claims in a conclusory fashion that Jamaica's testimony would have "contradicted" Cedna's. Dkt. No. 25 at 17. But he does not specify how, exactly. Chandler also claims that, had Jamaica testified, he would have testified as well. It is not clear why Chandler now premises his decision not to testify on

the absence of testimony from Jamaica or whether this was ever relayed to his counsel. In short, Chandler has not established that Jamaica was available to testify, the specific contents of her testimony, or how it would have been favorable to his defense. The TCCA did not unreasonably apply *Strickland* in rejecting Chandler's second IAC ground for relief.

In his third IAC ground for relief, Chandler alleges that his trial counsel was ineffective for failing to file a motion to suppress the safe on two grounds: (1) the safe was seized in violation of the Fourth Amendment, and (2) the safe was tampered with.

On the first argument, Chandler claims, more specifically, that the Dallas County detective's initial seizure of the safe from hotel staff, before obtaining a search warrant, was an unreasonable seizure under the Fourth Amendment. But there is no dispute that by June 8, 2015 – when the hotel maid discovered the safe in the room and turned over the same to the Dallas County homicide detective – Chandler was no longer a tenant of the room. Courts have held that "when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession." *U.S. v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987) (citing *United States v. Parizo*, 514 F.2d 52, 54-55 (2d Cir.1975); *United States v. Cowan*, 396 F.2d 83, 86-87 (2d Cir. 1968); *United States v. Rambo*, 789 F.2d 1289, 1295-96 (8th Cir. 1986); *United States v. Akin*, 562 F.2d 459, 464 (7th Cir. 1977), *cert.*

*denied*, 435 U.S. 933 (1978); *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir. 1977); *United States v. Croft*, 429 F.2d 884, 887 (1960)); *see also United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir. 1992) ("[a] guest in a motel has no reasonable expectation of privacy in a room after the rental period has expired"); *United States v. Ramirez*, 810 F.2d 1338, 1342 (5th Cir. 1987) (noting that one forfeits reasonable expectation of privacy in hotel room after abandoning it). Thus, Chandler had no expectation of privacy in the safe that would make the seizure unreasonable, and his trial counsel was not ineffective for failing to make what would have been a futile motion to suppress.

Even if Chandler's trial counsel's failure to file a motion to suppress was unreasonable, Chandler has not shown prejudice under the second prong of the *Strickland* analysis, especially given the eyewitness testimony that he shot the victim.

Chandler also appears to argue that his trial counsel was defective for not filing a motion to suppress on grounds that the safe had been tampered with by, presumably, either the maid or a Dallas County detective. Chandler notes that "the detective did not put his initials on the safe or identify the safe at trial except for his visual perception." Dkt. No. 3 at 7. But Chandler's trial counsel did object to authentication of the safe, specially that the chain of custody had not been properly established. So, Chandler cannot show defective performance; nor, as discussed above, can he show prejudice even assuming defective performance.

24

In short, the TCCA's rejection of Chandler's third ground for relief was not an unreasonable application of *Strickland*.

Next, by his fifth IAC ground for relief, Chandler argues that his trial counsel was ineffective for failing to object to prosecutorial misconduct during the voir dire. Dkt. No. 3 at 8. Specifically, the prosecutor asked venire members if they could consider the full range of punishment, and a venire person responded by asking whether a killing in self-defense is murder, to which the prosecutor responded:

> Take self-defense out of this. Okay. So sometimes in murder – just so kind of everybody – so sometimes in a murder case, if someone is breaking into my house and I have to defend myself or something like that, that may be murder that is self-defense. We kind of have a handle on what we think the law may be. We would be here for an extra hour talking about self-defense if we felt like that was something that might come up. Take that out of the equation. All right? Just like earlier I was like, death penalty, take it out of the equation. Something could happen and it could come up, but I don't anticipate that being an issue. Otherwise, we could talk for a long time about what self-defense is.

Dkt. No. 18-1 at 30. But "[a] failure to object does not constitute deficient representation unless sound basis exists for objection." *Shumski v. Davis*, No. 4:18-CV-293-Y, 2019 WL 426467, at *6 (N.D. Tex. Feb. 4, 2019) (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)). And, here, Chandler did not raise a theory of self-defense (whether his trial counsel was ineffective for failing to do so is addressed below); thus, to object to the prosecutor's comments would have been meritless. *See Emery*, 139 F.3d at 198. And, as the State notes, because Chandler did not raise self-defense, he cannot demonstrate a

reasonable probability that the prosecutor's response during voir dire affected the outcome of his trial. *Strickland*, 466 U.S. at 687. Thus, the TCCA's rejection of this ground for relief was not an unreasonable application of *Strickland*.

Turning to Chandler's sixth IAC ground for relief – that his trial counsel was ineffective for failing to request a lesser-included jury instruction as to manslaughter – the TCCA did not unreasonably apply *Strickland* in rejecting this claim.

First, such a request would have been futile under Texas law, and, again, counsel is not required to make futile objections. *Emery*, 139 F.3d at 198. Texas courts employ a two-step analysis for determining whether a lesser-included offense instruction is warranted: (1) the lesser included offense must be included within the proof necessary to establish the offense charged, and (2) there must be some evidence the record that if the defendant is guilty, he is guilty of only the lesser-included offense. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). Only if there is sufficient evidence of the lesser-included offense to allow a rational jury to conclude that, if the defendant is guilty, he is guilty of only the lesser offense, is a lesser-included offense instruction appropriate. *See Cavazos v. State*, 382 S.W.2d 377, 380 (Tex. Crim. App. 2012).

Chandler was charged with murder, that is, that he intentionally and knowingly caused the victim's death. *See* TEX. PENAL CODE § 19.02. Under Texas law, a person acts intentionally "when it is his conscious objective or

desire to engage in the conduct or cause the result," and a person acts knowingly "when he is aware of the nature of his conduct or that the circumstances exist" and "is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE § 6.03(a), (b). Manslaughter is a lesser-included offense of murder and is defined as recklessly causing the death of an individual. TEX. PENAL CODE § 19.04(a); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). "A person acts recklessly, or is reckless, with respect to…the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that…the result will occur." Tex. Penal Code § 6.03(c).

The State argues that there was no evidence of recklessness here but rather only intentional conduct on Chandler's part. The evidence presented at trial was that Chandler "ran into the Suburban Hotel where he was a registered guest and returned with a gun. Cerda testified [Chandler] pointed his gun through the passenger side and fired one shot into [the victim], killing him." *Chandler*, 2018 WL 6382120, at *2. Chandler argues in response that he acted recklessly. Dkt. No. 25 at 2. He argues that Cerda is not a credible witness. He also points to expert testimony opining that – contrary to Cerda's testimony – the victim was likely standing and not sitting when he was shot. *See id.* Finally, Chandler notes that an eyewitness to the fight described the victim as the aggressor. *See id.*

Initially, the undersigned notes that, to the extent Chandler is referring to Dr. Lenfest's testimony concerning the body position at the time of the victim at the time of the shooting, he misrepresents it. Dr. Lenfest testified that he was unable to determine the victim's body position at the time he was shot – not that the victim was standing. *See* Dkt. No. 19-14 at 193. And Chandler points to no evidence showing that he did not, after the conclusion of the physical altercation, return with a gun to shoot the victim at close range.

"To raise the issue of manslaughter, there must be evidence of a lack of intent to kill and evidence that [the defendant] acted recklessly while ignoring a known risk." *Munoz v. State*, 932 S.W.2d 242, 245 (Tex. App – Texarkana 1996, no pet.). And "the act of pointing a loading gun at someone and shooting it toward that person at close range demonstrates an intent to kill." *Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005); *see also King v. Davis*, A-16-CA-0900, 2017 WL 2703582, at *10 (W.D. Tex. June 22, 2017) ("The specific intent to kill may be inferred from the act of shooting a loaded gun toward a person at close range."; citing *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Lay v. State*, 359 S.W.3d 291, 296 (Tex. App. – Texarkana 2012 no pet.)). Here, in rejecting this IAC claim, the state habeas court would have been justified in concluding that there was no evidence in the record indicating that Chandler was guilty of manslaughter, and, therefore a jury instruction on the lesser-included offense of manslaughter was not warranted.

28

Alternatively, even if there was sufficient evidence in the record to allow for such an instruction, trial counsel's decision not to pursue it could also be seen as a strategic decision. Trial counsel's "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rhoades*, 852 F.3d at 434 (quoting *Strickland*, 466 U.S. at 690). Further, "[a] court reviewing those choices is required 'not simply to give [counsel] the benefit of the doubt…but to affirmatively entertain the range of possible reasons [he] may have had for proceeding as [he] did.'" *Feldman v. Thaler*, 695 F.3d 372, 380 (5th Cir. 2012) (quoting *Pinholster*, 563 U.S. at 196; further citations omitted).

And the Fifth Circuit has explained that "counsel is afforded particular leeway where a potential strategy carries 'double edged' consequences." *Mejia v. Davis*, 906 F.3d 307, 316 (5th Cir. 2018) (quoting *St. Aubin v. Quarterman*, 470 F.3d 1096, 1103 (5th Cir. 2006)). "This 'double-edged' principle extends to counsel's tactical decision to forego a lesser-included offense instruction to which his client would otherwise be entitled." *Mejia*, 906 F.3d at 316. This type of "all-or-nothing" defense strategy is not objectively unreasonable when counsel's "ultimate strategic choice was reasonable." *Druery v. Thaler*, 647 F.3d 535, 540 (5th Cir. 2011); *see also Thomas v. Vannoy*, 651 F. App'x 298, 303-04 (5th Cir. 2016) (explaining that, "[i]n the…context of lesser-included offense instructions, this court has recognized that counsel's choice not to request an instruction is a matter of strategy and subject to reasonable

debate"; citation omitted). Such a decision "dwells in the region of tactics and strategy," because the lesser-included offense instruction could increase the chance of conviction on some charge, while foregoing it could lead to a complete acquittal. *Adams v. Bertrand*, 453 F.3d 428, 435-36 (7th Cir. 2006) (brackets added).

Here, the TCCA could have reasonably concluded that Chandler's trial counsel made an informed decision to pursue an all-or-nothing strategy and thus reasonably declined to pursue a double-edged manslaughter jury instruction. Trial counsel's strategy could have been to emphasize the State's burden of proof and to discredit Cerda's eyewitness testimony. Were trial counsel to seek a lesser-included jury instruction for manslaughter, the possibility existed that the jury would have found that Chandler acted recklessly in causing the victim's death. Thus, while a lesser-included-manslaughter jury instruction might have lowered Chandler's odds of receiving a murder conviction, it also might have lowered his odds of receiving an acquittal and undermined trial counsel's theory that Chandler was not guilty of anything. This is the kind of double-edged consequence that the Fifth Circuit has previously found precludes a finding of deficient performance under *Strickland*. And so the TCCA did not unreasonably apply *Strickland* in denying Chandler's sixth IAC ground for relief.

In his seventh IAC ground for relief, Chandler claims that his trial counsel was ineffective for failing to argue self-defense. But a defendant's

"desire to have a specific defense theory presented does not amount to ineffective assistance on federal habeas review." *Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007). Chandler claims that, had his counsel properly investigated, he could have presented evidence and witnesses supporting a self defense. *See* Dkt. No. 3 at 9; Dkt. No. 5 at 5. But Chandler's allegations on this ground are conclusory and thus insufficient to sustain habeas relief.

And, as with the failure to seek a lesser-included-offense jury instruction, the decision not to pursue a self-defense strategy is a strategic one entitled to deference from this court. A focus on self defense would have been inconsistent with what may have been Chandler's counsel's theory of the case: that Chandler did not shoot the victim at all. At any rate, Chandler has presented no evidence from which the undersigned could conclude that his counsel was ineffective for failing to argue self-defense.

In sum, the TCCA did not unreasonably apply *Strickland* in rejecting Chandler's IAC claim premised upon the failure to raise self-defense.

## C.    Prosecutorial Misconduct

In his final ground for relief, Chandler claims that the State knowingly allowed perjured testimony from Cerda to go uncorrected, resulting in a due process violation. *See* Dkt. No. 3 at 9. The supposed perjured testimony consists of the statements considered above in relation to the failure-to-impeach IAC claim.

Prosecutorial misconduct may "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation and internal citation omitted). To demonstrate a due process violation concerning a prosecutor's use of perjured testimony, a petitioner must prove that (1) the testimony in question was false, (2) the prosecutor was aware of the perjury, and (3) the testimony was material. *See Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

But perjury is not established by mere contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements, and the trial testimony of prosecution witnesses. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Rather, "omissions merely go to the credibility of the witnesses, an area within the province of the jury." *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).

Chandler fails to demonstrate a due process violation. Instead, he documents differences between Cerda's trial testimony and statements that he gave to the police after the shooting. Such inconsistencies do not show perjury. *See Koch*, 907 F.2d at 531.

The TCCA's rejection of this ground for relief was not contrary to, nor did it involve an unreasonable application of, clearly established law as determined by the Supreme Court. *See Harrington*, 562 U.S. at 100-01.

## Recommendation

The Court should deny Chandler's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: September 8, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE